UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

AARON HILL, *et al.*,          )
                               )
*Plaintiffs*,                  )          Case No. 4:16-cv-117
                               )
v.                             )          Judge Mattice
                               )          Magistrate Judge Steger
KIA MOTORS AMERICA, INC., *et al.*, )
                               )
*Defendants*.                  )
                               )
_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

ROGER DALE PARKS, *et al.*,    )
                               )
*Plaintiffs*,                  )          Case No. 4:16-cv-118
                               )
v.                             )          Judge Mattice
                               )          Magistrate Judge Steger
KIA MOTORS AMERICA, INC., *et al.*, )
                               )
*Defendants*.                  )
                               )

**PLAINTIFFS'S RESPONSE TO KIA MOTORS AMERICA, INC.'S AND KIA MOTORS CORPORATION'S STATEMENT OF SUPPORTING FACTUAL POSITIONS**

Plaintiffs in *Aaron Hill, et al. v. Kia Motors America, Inc., et al.* and Plaintiffs in *Roger Dale Parks, et al. v. Kia Motors America, Inc., et al.*, by and through their attorneys, hereby respectfully submit their response to the documents filed with of Kia Motors America, Inc.'s and Kia Motors Corporation's (the "Kia Defendants") Motion for Summary Judgment. (Doc. 316) Pursuant to Civ. Proc. R. 56(c)(1), a party moving for summary judgment must support its

1

motion by setting forth material facts that cannot be disputed, citing to parts of the record.  The document identified as Doc. 316 appears to be the Defendants' statement in support of that rule, although it is not filed as such.[1]

In compliance with the rule, therefore, Plaintiffs respectfully respond to the nine paragraphs in Doc. 317 to show that those statements are genuinely disputed.  Plaintiffs also submit herewith their own statement of material facts that cannot be genuinely disputed.

**Paragraph 1** – Plaintiffs dispute the Defendants' claim that "Mary Parks drove her 2008 Kia Optima into the back of a mini-van occupied by the Hill family."  As Plaintiffs explain in their accompanying memorandum in opposition, that statement is misleading because it was a defect in the subject vehicle, not Mrs. Parks, that caused the crash.  To assert that Mrs. Parks "drove" her car into the back of the Hill's Ford minivan makes it appear as if she were the sole instrumentality responsible for that tragic event.

**Paragraph 2** – The Kia Defendants assert that "it is well established and no one disputes, that pedal misapplication is a known cause of motor vehicle acceleration incidents," citing a dated 2003 NHTSA report in which it evaluated electronic data recorder (EDR) readings.  But the defendants fail to mention that there are other government studies that show that defects in vehicles equipped with electronic throttle control systems, as opposed to driver error, can cause unintended throttle opening, per NASA.  As to the Santa Monica Farmer's Market unintended acceleration incident, that study is irrelevant as it concerned a totally different type of vehicle – a 1992 Buick LeSabre - one not equipped with an electronic throttle control system.

---

[1] The Plaintiffs' more complete recitation of the facts showing there are genuine issues of material fact as well the legal analyses supporting that assertion are set forth in greater detail in their memorandum in opposition to the Kia Defendants' Memorandum in Support of Their Motion for Summary Judgment (Doc. 317).

2

**Paragraph 3** – The Kia Defendants cite excerpts from the complaint in which the Plaintiffs catalog certain ways in which an electronic throttle control (ETC) system of the subject 2008 Kia Optima vehicle can fail.  The Defendants claim that these factors are "plainly hypothetical" and vague.   It is not clear what point the Defendants are making in that they do not specifically deny any of those statements, but that creates issues to be decided by the jury.  The Defendants own technical documents cite "possible causes" such as "open or short in wiring harness, poor connection or damaged harness, faulty cruise control switches and faulty engine control modules."  Doc 278, PageID# 5956.  Obviously, the Defendants disagree, but that creates an issue of material fact to be decided by the jury.  Moreover, the complaint was filed approximately 2-1/2 years ago (not three years as claimed by the Defendants), before discovery had been undertaken, and obviously those assertions, while still on point and relevant, have been refined.

**Paragraph 4** – The Defendants claim that "Plaintiffs are no closer than they ever were to finding an actual, actionable defect," claiming (incorrectly) that Plaintiffs now rely upon "seven possible scenarios," gleaned from the deposition of Plaintiffs' expert Byron Bloch.  First, that assertion relies upon an incorrect view of the Tennessee Law of Product Liability.  It is not necessary to pinpoint to a "specific defect", instead liability can be predicated upon circumstantial proof.  Second, the Defendants in this paragraph do not appear to assert that the seven listed items are not a possible or feasible result given the design of the subject vehicle, but only that they relate to susceptibilities.  As will be explained in greater detail in the accompanying Memorandum in Opposition, Mr. Bloch was charged with an aspect the case:  to analyze the design of the cruise control system with emphasis upon its cruise control multifunction switch, clock spring wiring harness and related componentry and to give his

opinion as to how that design is deficient in both its operation and materials. That he did. The issue of specific causation is matter for other additional experts, as well as substantial circumstantial proof.

**Paragraph 5** – Referring to the above noted seven scenarios, Defendants unfairly claim that there is "no evidence" to support them, citing a litany of references to the expert depositions. The assertion of "no evidence" is patently incorrect; as discussed (1) the brake stop lamp switch, Kia Motors Corporation (KMC) itself recalled the switch in Mrs. Parks's vehicle to correct the defect (Recall SC098, Doc. 313-1, PageID#7793); (2) as to evidence of a "voltage drop," it is unscientific to assert after the fact that one could open up the vehicle and find evidence of such a voltage drop, as is recognized by NASA; (3) as to an examination of the cruise control buttons, that would be an absurd exercise in a car that had been severely deformed during a high-speed crash. In any event, there was ample proof that the cruise control acceleration function, which is triggered by one of those "buttons," was defective, given that nine diagnostic trouble codes were generated indicating just that; (4) as to evidence of "brake issues," there is ample evidence given the statements of the driver, Mary Parks, as well as testing performed by Steven Loudon as to why brake effectiveness is impeded that open throttle. (5) as to evidence of "actual issues with the PCU," the DTCs establish that there were actual issues with the cruise control acceleration function. It was the download of the PCU that established that fact; (6) as to evidence of EMI or cross-talk, the fact the Mrs. Parks had complained about radio problems is certainly circumstantial proof that there was a problem with the clock spring that also controls the cruise control functions. The DTCs are likewise evidence that there was a fault in the cruise control system; and (7) finally, the statement that "none of the experts has done testing or analysis establishing that any of the theories was possible on this vehicle on that day," the Defendants

4

ignore the testing of Mr. Loudon who shows that the evidence captured on the vehicle's gauges, *to wit,* the 4300 rpms, the 92 mph, and the 80% open throttle are consistent with only one theory -- that the cruise control system had generated the acceleration. According to Mr. Loudon, there is no other explanation for it.

**Paragraph 6** – As to the suggestion that none of the Plaintiffs' theories are supported by evidence, the Court is respectfully referred to the foregoing paragraph. The remaining portions of that paragraph are merely arguments of counsel. They are also baseless in that they contend Plaintiffs' only methodology is to find a document on the internet that says something happened in the vehicle and then assert that it happened in Mrs. Parks's vehicle. The facts speak for themselves.

**Paragraph 7** – In this paragraph, the Defendants cite a statement by Plaintiffs' counsel Mr. Murray at the Bloch deposition to the extent that the plaintiffs' expert reports are preliminary. That is obviously a boilerplate assertion that most litigants -- including the Defendants with respect to their expert reports -- assert as a matter of precaution in case further evidence arises and the Court permits the parties to comment upon it. Mr. Murray also refers, correctly, to the fact that the Court has not yet determined whether discovery will proceed as to the Hyundai defendants.

**Paragraph 8**- This paragraph is conclusory in that it claims, again, that the Plaintiffs have not identified any evidence to permit a jury to conclude that a defect in the subject vehicle caused the crash.[2] Even if the experts' testimonies were not admissible, there is ample

---

[2] In Footnote 5, the Defendants claim that although plaintiffs' expert Steven Loudon criticized KMC for not doing an FMEA, he does not identify how the lack of an FMEA made any difference to Mrs. Parks and the Hill family. That is false. In his report, Mr. Loudon specifically states that if KMC had performed such an FMEA, it would have identified the problems cataloged here and done something about it.

circumstantial proof that a problem with the vehicle, not a problem with Mrs. Parks, caused the event.

**Paragraph 9** – The Defendants claim Kia Motors America, Inc. (KMA) is not liable because it is a seller, not a manufacturer, and thus this action is barred by Tennessee law. Plaintiffs assert that KMA had substantial involvement with Kia vehicles and that KMA must remain a party in this matter because of substantial control of the U.S. version of the 2008 Kia Optima, specifically substantial involvement with the testing and labeling:

The Defendants claim Kia Motors America, Inc. (KMA) is not liable because it is a seller, not a manufacturer, and thus this action is barred by Tennessee law. Plaintiffs assert that KMA had substantial involvement with Kia vehicles and that KMA must remain a party in this matter because of substantial control of the U.S. version of the 2008 Kia Optima, specifically KMA's significant involvement with the testing and labeling:

<u>Evidence of Testing by KMA</u>

KMA exercises substantial control over testing of their vehicles for sudden unintended acceleration, and thus, should remain as a party in this matter by statute. *See* T.C.A. §§ 29-28-106 (1).

For instance, Alan Dow, who is the Manager of Engineering and Technical Analysis of KMA testified that he monitors vehicle performance in the field, which includes sudden acceleration incidents. (Depo. of Alan Dow, pg. 7; ll. 15-18; pg. 13; ll. 22-25; pg. 14; ll. 1-4). The KMA testing involves the inspection of vehicles with sudden acceleration concerns through physical inspection and testing of those vehicles. (Depo. of Alan Dow, pg. 42; ll. 21-25; pg. 43; ll. 1-8). Such testing includes throttle actuation tests, stall tests, graphing APS and TPS signals on the Kia vehicles by KMA. (Depo. of Alan Dow, pg. 43; ll. 24-25; pg. 44; ll. 1-5; pg. 44; ll.

22-23). Such KMA testing includes evaluating the throttle opening amount as well as the throttle plate condition, the throttle body condition, and the bore of the throttle body. (Depo. of Alan Dow, pg. 45; ll. 24; pg. 52, ll. 7-20). Such testing includes test driving the vehicles with sudden acceleration concerns by KMA as well as a general inspection and documentation of the vehicle condition and damage and a very close inspection of the accelerator pedal, brake pedal, floor mats, driver's footwell area, and operation of the accelerator pedal and brake pedal. (Depo. of Alan Dow, pg. 51; ll. 4-5, 23-25; pg. 52; ll. 1-2). Such testing by KMA includes checking for diagnostic trouble codes and monitoring other engine parameters such as accelerator pedal sensors, throttle pedal sensors, throttle position sensors and track the data from that testing. (Depo. of Alan Dow, pg. 52; ll. 7-20).

<u>Evidence of Labeling by KMA</u>

KMA exercises substantial control over labeling of their vehicles such as the subject 2008 Kia Optima and thus, should remain as a party in this matter by statute. *See* T.C.A. §§ 29-28-106 (1). KMA also labels the vehicle with warranty information and roadside assistance information once it reaches the United States from Korea. (Depo. of Michele Cameron; pg. 191; pg. 18-25; pg. 192; pg. 2-9). The Monroney label is also placed on the vehicle by KMA which lists the make and model of the vehicle, engine and transmission specifications as well as other features including interior, exterior, and safety. (Depo. of Alan Dow, pg. 29; ll. 6-11). This labeling by KMA is done to the vehicle at the port. (Depo. of Michele Cameron; pg. 192; pg. 2-9).

7

<u>Evidence of post-sale responsibilities, duties and knowledge of UA issues by KMA</u>

Kia Motors America (KMA) publicly represents that it is the "sales, marketing and distribution arm of Kia Motors Corporation (KMC)."[3] As shown through prior briefing and exhibits, KMA is clearly also the central provider of customer assistance, warranty claims and quality information reports for all Kia vehicles sold in the United States. KMA has key knowledge about consumer complaints, field reports, defect trends and component supplier issues. KMA exclusive knowledge of this important feedback loop that clearly influences design and eventual manufacturing of vehicles and componentry of Kia vehicles sold in the U.S.

Thus, because of the substantial involvement and essentially exclusive control by KMA over the testing, labeling, sales, marketing and distribution of Kia vehicles, including the subject 2008 Kia Optima in the case at bar, it is appropriate that KMA remain a party in this matter pursuant to T.C.A. § 29-28-106 (1).

Therefore, for these reasons, KMA is a proper defendant and must remain in the case.

## **CONCLUSION**

The Kia Defendants' statement of facts is disputed, as set forth above. For that reason and for the reasons stated in the accompanying memorandum in opposition, the Court should deny the defendants motion for Summary Judgment.

Dated: June 20, 2019                                Respectfully submitted,

                                                                        /s/ Thomas J. Murray_____
                                                                        Thomas J. Murray, *pro hac vice*
                                                                        tom@thomasjmurraylaw.com

---

[3] Source: KMA website: https://www.kiamedia.com/us/en/corporate/about-kma

James W. Murray, *pro hac vice*
jim@thomasjmurraylaw.com
**THOMAS J. MURRAY & ASSOCIATES**
358 Main Street
Huron, Ohio 44839
Ph: (419) 616-0097
Fx: (419) 502-0088

C. Brent Keeton, Esq. (BPR # 22147)
**KEETON & PERRY, PLLC**
401 Murfreesboro Highway
Manchester, Tennessee 37355
brent@keetonperry.com
Ph: (931) 723-7145
Fx: (931) 723-7147

**Attorneys for the Hill Plaintiffs**

AND

/s/ Christina Henley Duncan
J. Stanley Rogers (BPR No. 2883)
Christina Henley Duncan (BPR No. 13778)
**ROGERS, DUNCAN & NORTH**
100 North Spring Street
Manchester, TN 37355
Ph: (931) 728-0820

**Attorneys for the Parks Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2019, a true and exact copy of this motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*/s/ James W. Murray*
**Attorney for Plaintiffs**