UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| AARON HILL, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | Case No. 4:16-cv-117 |
| | ) | |
| v. | ) | Judge Mattice |
| | ) | Magistrate Judge Steger |
| KIA MOTORS AMERICA, INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

___

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| ROGER DALE PARKS, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | Case No. 4:16-cv-118 |
| | ) | |
| v. | ) | Judge Mattice |
| | ) | Magistrate Judge Steger |
| KIA MOTORS AMERICA, INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**HILL PLAINTIFFS' MEMORANDUM IN RESPONSE TO KIA MOTORS AMERICA, INC.'S AND KIA MOTORS CORPORATION'S MOTION FOR A PROTECTIVE ORDER CONCERNING EXPERT REPORTS AND DEPOSITIONS AND THE HILL PLAINTIFFS' CROSS-MOTION TO STRIKE CERTAIN PORTIONS OF DEFENSE EXPERT ELDON LEAPHART'S REPORT**

Plaintiffs Aaron Hill and Lynetta Hill (the "Hill plaintiffs") hereby respectfully submit their response to the motion of Kia Motors America, Inc. (KMA) and Kia Motors Corporation (KMC) for a protective order concerning expert reports and depositions. (Doc. 297) In addition,

1

they respectfully ask the Court to strike certain portions of the report of defense expert Eldon Leaphart.

### I. The Additional Materials Served Upon Defendants Are Not Relied Upon By Plaintiffs' Expert Byron Bloch in Reaching His Opinions.

As the defendants recount, plaintiffs' counsel did serve additional materials upon the defendants on April 16 and 18, 2019. The transmittal email (Exhibit 3, Doc. 297-3) states as follows: "Plaintiffs have uploaded additional information in the DropBox for your review." There is no statement that these documents were relied upon by Mr. Bloch for his opinions. In fact, those materials are in no way predicates for the opinions in Mr. Bloch's March 29, 2019 Expert Report. They were provided in good faith as general background, not to bolster his opinions. Many of those materials relate to well-established EMC (electromagnetic compatibility) principles and how a clockspring works generally. Mr. Bloch's knowledge of those issues exists independently of those documents and he does not rely upon them.

Accordingly, plaintiffs will stipulate that the materials provided on April 16 and 18 will not be included as part of Mr. Bloch's file, to the extent they are not otherwise included within the materials provided on March 29, 2019.

Plaintiffs do, however, oppose the third request in defendants' motion for a protective order, to wit: "Admonishing Mr. Murray and the other plaintiffs' counsel to cease directing, encouraging, and permitting their experts to bolster their original opinion with additional information not timely produced pursuant to the Court's Order and Rule 26." (Doc 297, Page ID# 6859.)

Protective orders are governed by F.R.C.P. § 26(c)(1), which specifies as follows:

> The motion [for a protective order] must include a certification that the movant has in good faith conferred or attempted to confer with the other

2

> affected parties in an effort to resolve the dispute without court action.
> The court may, for good cause, issue a protective order to protect a party
> or person from annoyance, embarrassment, oppression, or undue burden or
> expense … .

Those criteria have not been met here. Instead, defendants are seeking an injunction ordering plaintiffs' counsel to ensure that plaintiffs' experts refrain from looking at additional materials that could possibly "bolster" their opinions. As framed, defendants are asking, in effect, that plaintiffs' experts stop thinking. Their request is also contradicted by the way their own experts govern themselves. For example, the defendants' biomechanical expert Thomas McNish states the following caveat in his March 27, 2019 report: "As additional information is made available to me or as new facts are uncovered during the investigation and discovery process, my professional preliminary opinions may change to reflect the newfound information." (**Exhibit 1**) Defense expert James Walker similarly states in his March 29, 2019 report: "I reserve the right to both revise these opinions and offer new opinions as additional information becomes available." (**Exhibit 2**) The March 29, 2019 report of defense expert Eldon G. Leaphart states "I reserve the right to revise these opinions and offer new opinions as additional information becomes available" (**Exhibit 3**) and defense expert Eddie Cooper in his March 28th report states: "If additional information or test results are generated or if additional or specific allegations regarding the cause of this accident are raised by the plaintiffs, a supplemental report may also be produced." (**Exhibit 4**)

On April 23, 2019, Mr. Cooper did in fact submit an additional report addressing the opinions of all five of the plaintiffs' experts. At the end of the report, he reiterates this escape clause: "If additional information or test results are generated or if additional or specific allegations regarding the cause of this accident are raised by the Plaintiffs, a further rebuttal

3

report may also be produced." (**Exhibit 5**) Mr. Leaphart also submitted a rebuttal report on April 23.

In other words, Mr. Murray's statements during the Bloch deposition that the defendants complain of here track *boilerplate recitals found in virtually every expert report*. Muzzling plaintiffs' counsel and their experts *a priori* and without limitation or context would be clear error. Whether the opinions of any experts can be supplemented is a case-by-case matter. As is recognized in *Moore v. Weinstine Co., LLC,* 2012 WL 1884758 (M.D. Tenn. May 23, 2012), cited by defendants, there may be good cause for supplementation, whether or not the supplemental information is deemed "rebuttal". The injunctive relief requested is also impossibly vague, exposing counsel to contempt of court where it is not clear what behavior is sought to be proscribed.

II. **The Portions of Defense Expert Eldon Leaphart's Opinions Analyzing in Detail the Interior Architecture of the ECM Must be Stricken, or, in the Alternative, Defendants Should be Directed to Produce the Materials Underlying Those Opinions and Plaintiffs Permitted to Rebut Them.**

Defense expert Eldon Leaphart was deposed on April 24, 2019 and on pages 42 – 45 of his report, he addresses "Electromagnetic Compatibility (EMC) PCU design considerations." (**Exhibit 6**) According to him, "It is well received that the manner in which an electronic control module is designed and constructed in consideration of the electromagnetic principals [sic] contributes to minimizing adverse effects from potential electromagnetic interference (EMI)." (*Id.* at 42) He proceeds to discuss in great detail the internal architecture of the 2008 Kia Optima's ECM in the areas of "structure and grounds, power systems, digital circuits, analog circuits, communication protocol, and shielding." He discusses the importance of "circuit board structure and layout" and how KMC achieves safety by "grouping components by functional

4

area and ensuring that ground planes or trace routes are appropriately placed." (*Id.* at 43.) He also discusses the importance of "layout and placement of analog circuits relative to analog and power circuits" on the ECM and how Kia has "located its general analog circuitry on the ECM close to the main harness IO connector" and that "low level analog signals such as sensor input LPFs are confined to an analog section of the circuit board." (*Id.* at 44)

Further, "The PCU [the ECM] found in the 2008 Kia Optima locates digital clock connection runs on a single layer. Clock, address and data traces appear short relative to larger dimensions of the circuit board." As another example: "Analog circuits are decoupled with radio frequency (RF) noise at the IO connector with compositor networks. Low level analog signals such as sensor input LPS are confined to an analog section of the circuit board." (*Id.* at 44)

Thus, again and again, Mr. Leaphart stresses how the "layout and placement" of the various components on the ECM circuit board are of utmost importance for safety. He opines that this design renders the ECM safe. He illustrates those opinions with photographs of an exemplar ECM. But those photographs provide no insight into the functionality of the components depicted or how they are connected with one another and the outside componentry.

It was that specific, detailed, information about the ECM that the plaintiffs have been endeavoring to obtain for nearly two years. It is simply unfair to permit KMC to now have an expert testify to the jury how superior the ECM's interior architecture is when plaintiffs are denied an opportunity to critique it. The details of the interior architecture of the 2008 Optima's ECM as discussed by Mr. Leaphart were not provided in discovery, despite the plaintiffs' many efforts to obtain them, as set forth in detail at Doc. 131 and as summarized below:

In RFP No. 1, served on May 24, 2017, plaintiffs asked KMC for the block diagrams and schematics for the subject vehicle's ECM, showing components both inside and outside the

ECM.  In response, on October 11, 2017, KMC produced a "cartoonish" block diagram -- KMC329, part of the Siemens specification -- that gives little detail as to the interior architecture. (Doc. 131, Exhibit 5, filed under seal)  In its supplemental response dated November 22, 2017, KMC additionally cited KMC829-840, a Motorola specification that provides detail as to the "yellow box" found on KMC329 and KMC380, but nothing else.  KMC stated that because it is not the designer or manufacturer of the ECM, it does not believe it is withholding anything "in its possession, custody or control."  (Doc. 131-1, Page ID# 1887)  The parties had several back and forth discussion on this issue with no resolution.  In a December 21, 2017 letter, KMC's counsel said that if plaintiffs wanted more detail, they should have sued the suppliers (Doc. 131-3, Page ID# 1996) and in its final response on January 5, 2018, KMC stated "KMC has completed its search.  KMC is not withholding any documents in response to its objections." (Doc. 131-1, Page ID# 1888)

During a January 8, 2018 argument before the Court, KMC's counsel reiterated that theme, stating "We don't have any interest in the details in that particular document [referring to the "cartoonish" block diagram].  And I've explained that to them.  To the extent they want more details, they can find those details in the documents that have already been provided."  As to the H-bridge, counsel stated:  "They already have as much detail about the H-bridge as KMC has and is ever going to have."  (Doc. 178-6)

In RFP No. 2, served on May 24, 2017, plaintiffs asked for the "circuit board-level diagrams of the ECM of the 2008 Kia Optima" that identify all components on the board [the ECM], all connections between these components, and the external connections to and from the ECM circuit board.  In its supplemental response dated October 11, 2017, KMC produced one diagram, 02800-2G000 (KMC378), showing connections to and from the board <u>but nothing</u>

6

<u>inside the board</u>. The parties again engaged in extensive back and forth discussions on this issue and in its final response dated January 5, 2018, KMC stated "KMC has completed its search. KMC is not withholding any documents based upon its objections." (Doc.131-1, Page ID# 1888)

Given KMC's refusal to supply information as to the interior layout of the ECM, the comment that defendants "don't have any interest in the details in that particular document," and KMC's representation that it had no additional responsive documents, KMC's experts should not now be permitted to comment extensively on the ECM's interior architecture as Mr. Leaphart has done. Either the defendants must supply at once the materials relied upon by its experts in that regard, with an opportunity for plaintiffs to address those materials, or defendants' experts should be precluded from opining as to the interior design of the 2008 Optima's ECM insofar as those opinions rely upon materials beyond those produced in discovery.

WHEREFORE, plaintiffs agree to excise any materials from expert Byron Bloch's file that were not provided in the March 29, 2019 disclosure, but they oppose any directive requiring the plaintiffs or their experts from considering additional materials.

Plaintiffs also respectfully request that the Court either exclude any testimony by the defendants' experts as to the interior design of the 2008 Optima's ECM, other than concerning matters in materials already produced in discovery or, in the alternative, that the defendants be directed to produce the materials relied upon by its experts in that regard and allow plaintiffs' experts an opportunity to address those materials in a rebuttal report.

7

Dated: July 25, 2019					Respectfully submitted,

                /s/ Thomas J. Murray
                Thomas J. Murray, *pro hac vice*
                tom@thomasjmurraylaw.com
                Mary S. O'Neill, *pro hac vice*
                molly@thomasjmurraylaw.com
                James W. Murray, *pro hac vice*
                jim@thomasjmurraylaw.com
                **THOMAS J. MURRAY & ASSOCIATES**
                358 Main Street
                Huron, Ohio 44839
                Ph: (419) 616-0097
                Fx: (419) 502-0088

                C. Brent Keeton, Esq. (BPR # 22147)
                **KEETON & PERRY, PLLC**
                401 Murfreesboro Highway
                Manchester, Tennessee 37355
                brent@keetonperry.com
                Ph: (931) 723-7145
                Fx: (931) 723-7147

                **Attorneys for Plaintiffs**
                **Aaron Hill and Lynetta Hill**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 25, 2019, a true and exact copy of this motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Thomas J. Murray*
**Attorney for Plaintiffs**